UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN-SOUTHERN DIVISION

In Re: Premier Generator Service, LLC

Case no. 26-30965
Ch. 11
Judge: Joel D. Applebaum

Debtor.
______________________/

# PLAN OF REORGANIZATION

Premier Generator Service, LLC (the "Debtor") proposes this plan of reorganization (the "Plan") through its undersigned counsel. This proposed plan of reorganization is subject to Bankruptcy Court approval and is for the resolution of outstanding claims against and interests in the Debtor pursuant to Chapter 11 of Title 11 of the United States Code (the "Code").

## A. Description of the Debtor

The Debtor is an LLC in good standing operating out of the Debtor's Representative Steve Withrow's home located in St. Clair County, Michigan. The Debtor sells, installs and services home and commercial generators. The Debtor employes 3 people on a 1099 basis. These people are paid by the job and only work installing generators.

## B. Causes of the Bankruptcy Filing

The Debtor's representative, Steve Withrow, started the business with no prior business experience. At the time the business opened it was undercapitalized and as

well did not have accounting systems in place to assist in the bidding of jobs, the control of expenses and the collection of monies owed. This caused the Debtor to borrow from unconventional sources which caused a cashflow crunch. With creditors threatening legal action and the stress of the financial problems inhibiting Mr. Withrow's ability to concentrate on operating the business, the Debtor filed the instant chapter 11.

A. **Post Petition Litigation**

The Debtor retained counsel and caused the filing of the pre-status conference report and appeared at the required status conference. The Debtor has filed all required monthly operating reports.

B. **Post Petition Activity**

The Debtor has ben profitable post petition as set forth in the monthly operating reports filed with the Court. Business has been steady and new contracts for new business have been signed in the ordinary course. In addition, the Debtor has set up a better accounting system to track costs. Having this information has helped the Debtor better manage its business.

C. **Liquidation Analysis.**

To confirm the Plan, the Court must find that all creditors who do not accept the Plan will receive at least as much under the Plan as such claim holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as **Exhibit "A"**. In a liquidation, Debtors estimate a total of $0 would be available to general

unsecured creditors after deductions for liquidation costs, trustee fees and costs. The Debtor is offering a $57,000 dividend to its general unsecured creditors over the life of the plan. These projections are based on the Debtor's historical performance, and more importantly, its post petition performance.

E. **Financial Projections**

The Debtor has provided projected financial projections as **Exhibit "B"**. The Debtors financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) in an amount sufficient to meet the requirements of this Plan.

## ARTICLE 1 SUMMARY OF CLAIMS AND CLASSES

**This Plan provides for the following classes and claims:**

**Group 1:** Estimated Administrative Expense claims pursuant to 11 U.S.C.

| | |
|---|---|
| §507: Subchapter V Trustee fees: | $5000 |
| Debtor's Chapter 11 counsel fees + expenses: | $25,000 |
| Less Retainer Deposit: | $8262 |
| Estimated Admin Expenses Due from Debtor: | $21,738 |

**Class 1: Unsecured Creditors**

This class consists of those creditors listed on Schedule F who have not filed claims and those creditors who have filed unsecured claims. The total amount of unsecured debt totals $118,299.

**ARTICLE 2 TREATMENT OF CLASSES OF CLAIMS**

**Group 1 Administrative Expense claims pursuant to 11 U.S.C. §507**

This class is Impaired.

Debtor's Chapter 11 Counsel of approximately $16,738.

Subchapter V Trustee fees of approximately $5,000.

The Debtor will pay the claim of counsel in full without interest over 21 months with the first payment commencing 30 days after entry of any Court Order approving payment of such fees. The claim of the Subchapter V Trustee will be paid in full with her payment due 30 days from any Order approving her fees. This proposed distribution is subject to increase if the Debtor incurs additional administrative expenses including but not limited to expert witness expenses, additional attorney fees to promote conformation of a contested plan and additional Subchapter V Trustee fees necessary to promote confirmation of this plan and/or to mediate plan confirmation by consent. Any increase in administrative expenses will be paid from the amounts the Debtor estimates for disbursement to Class 5 general unsecured creditors.

**Class 1: Allowed Unsecured Creditors**

This Class is impaired.

General unsecured claims: $118,299.

The Class 1 claims of unsecured creditors consists of general unsecured creditors shall be paid the sum total of $57,000 which each creditor shall share on a pro rata basis. These funds shall be paid in 21 monthly payments of $1000.00 and then 15 subsequent payments of $2000 for a 15 month period. The first payment shall be due 90 days from confirmation.

## ARTICLE 3 ALLOWANCE AND DISALLOWANCE OF CLAIMS

a. **Disputed Claim.** A disputed claim is a claim that has not been allowed or disallowed by a final nonappealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

b. **Settlement of disputed claims.** The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**ARTICLE 4 EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

The Debtor has no executory contracts.

**ARTICLE 5 DISCHARGE**

On the confirmation date of this Plan, if deemed consensual confirmation, and subject to the occurrence of the Effective Date, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1 14l(d)(l)(A) of the Bankruptcy Code, but the Debtor will not be discharged of any debt: (a) imposed by this Plan; (b) of a kind specified in § 1 14l(d)(6)(A) if a timely complaint was filed in accordance with Federal Rule of Bankruptcy Procedure 4007(c) of the; or (c) of a kind specified in§ 114l(d)(6)(B).

In the event that this Plan is confirmed as a non-consensual plan, Debtor shall be eligible to receive a discharge under § 1192 of the Bankruptcy Code upon payment in full of the sums required under this Plan and application to the Court.

**ARTICLE 6 PLAN PROPOSED IN GOOD FAITH**

The Debtor represents that it is within Debtor's ability to carry out this Plan, and the Plan is submitted in good faith.

**ARTICLE 7 RETENTION OF JURISDICTION**

The Court shall retain jurisdiction of this Chapter 11 case to issue orders necessary to the consummation of the Plan; to determine the allowance of compensation and expenses of professionals; to determine any and all adversary proceedings,

applications and contested matters; to determine issues or disputes relating to the assumption of executory contracts and any claims related thereto; to determine disputes as to classification or allowance of claims or interests; to issue such orders in aid of execution of this Plan to the extent authorized by § 1142 of the Bankruptcy Code; to enforce the provisions of the Plan; to recover all assets of the Debtor and property of the Debtor's estate, wherever located; to resolve any dispute between or among any of the parties to this bankruptcy proceeding, to determine other such matters as may be set forth in a confirmation order or as may be authorized under the provisions of the Bankruptcy Code; to enter a final decree closing the bankruptcy case; and to connect any defect, cure any omission or reconcile any inconsistency in this Plan or confirmation order, and to take any action or make any ruling as may be necessary to carry out the purpose and intent of this Plan.

## ARTICLE 8 LIQUIDATION ANALYSIS

The Debtor's Liquidation Analysis is attached as **Exhibit "C"**. The Debtor believes unsecured creditors would receive $0 upon liquidation and Chapter 7 and Chapter 11 administrative expense claims and after the payment of secured claims and priority claims. The Debtor proposes payment of $57,000 to unsecured creditors, a $57,000 improvement over what Debtor estimates recovery would be in a Chapter 7. All values stated in the

Liquidation Analysis for assets, liabilities, costs, expenses and potential recoveries are based on good faith estimates using information currently available to the Debtor. The estimates have not been subject to audit or appraisal. The estimates shall in no way be construed to constitute binding guaranties, representations or warranties and are subject to revision at any time. Except as otherwise noted herein or in the Plan, the values for the Debtor's assets, as set forth in the Bankruptcy Schedules filed in connection with the Bankruptcy Petition, reflect the Debtor's best estimate of the market value of its assets, except where noted to the contrary. In establishing the values, Debtor has considered the size, age, physical condition and location of the assets.

## ARTICLE 9 PLAN IMPLEMENTATION

a. **Plan projections.** The Debtor has attached as **Exhibit "B",** its summary of post-confirmation financial projections for the life of the Plan. These projections are based on:

1. The Debtor's post petition performance.
2. The changes to its business made by the Debtor.
3. The Debtor's knowledge of the industry and this market.

b. **Voting and Acceptance of the Plan.**

b.1 Debtor will only count ballots timely returned by impaired creditors.

b.2 If Debtor receives votes in an impaired creditor class, the plan shall be deemed accepted and confirmed by consent of the creditors if the ballot received in favor of the plan comprise a simple majority and two-thirds dollar amount.

b.3 If no ballots are received or if an insufficient number of creditors vote in favor of the plan the Debtor may confirm the plan as a nonconsensual plan.

c. **No Further Approvals.** The transactions contemplated by the Plan shall be approved and effective as of the Effective Date without the need for any further state or local regulatory approvals or approvals by any non-Debtor parties, and without any requirement for further action by the Debtor.

d. **Confirmation**

If the Plan is confirmed under section 11 91(a), the Subchapter V Trustee shall continue to exercise those powers and perform those duties specified in Bankruptcy Code section 1183 through Substantial Consummation of the Plan at which point her services shall terminate. If the Plan is confirmed under section 1191 (b), the Subchapter V Trustee shall not be terminated until the Trustee has performed such duties as are described in sections 1183 and 1194(b) and such other duties as she may have been assigned by the Bankruptcy Court prior to the Effective Date.

e. **Pre-Effective Date Injunctions or Stays.** All injunctions or stays, whether by operation of law or by order of the Bankruptcy Court, provided for in the Subchapter V Case pursuant to Bankruptcy Code sections 105 or 362 or otherwise that are in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.

f. **Avoidance Actions.** Unless otherwise set forth in this Plan, on the Confirmation Date, the right to pursue any and all Avoidance Actions shall transfer to the Reorganized Debtor.

g. **Preference.** As of the date of the filing of this plan the Debtor possesses no preference action.

h. **Change of Address.** In order to ensure that it receives its distribution, each Creditor holding an Allowed Claim must advise the Reorganized Debtor or Subchapter V Trustee, as applicable, of any change in address. Absent any such notification, the Reorganized Debtor or Subchapter V Trustee, as applicable, shall send payments to the address listed on the Matrix on file with the Bankruptcy Court.

i. **Vesting of Property.** Title to all property of the Debtor shall vest in the Reorganized Debtor upon the Effective Date of the Plan. The Debtor shall be discharged from its status as Debtor and the affairs and business of the Reorganized Debtor shall thereafter be conducted without Court

involvement except as may be governed by the Plan. In the event this case is converted to a Chapter 7, all property of the Debtor and reorganized debtor will revest in the estate.

j. **Monthly Reports.** The Debtor will remain responsible for filing timely Monthly Operating Reports until this case is confirmed, dismissed or converted to Chapter 7.

## ARTICLE 10 MISCELLANEOUS PROVISIONS

a. **Definitions and Rules of Construction.** The definitions and rules of construction set forth in § 101 and § 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan.

b. **Effective Date of Plan.** The effective date of this Plan is the first business day following the date that is fourteen days after the entry of the order of confirmation. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated.

c. **Severability.** If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

d. **Binding Effect.** The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of, the successors or assigns of such entity.

e. **Appendices.** The Appendices attached to the Plan are incorporated into the Plan by reference as if the same were fully rewritten herein.

f. **Captions.** The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

g. **Controlling Effect.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Michigan govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

h. **Corporate Governance.** Not applicable where this is an individual debtor.

i. **Computation of Time.** In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006 will apply.

J. **Confirmation Order Controls.** In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

k. **Governing Law.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the

State of Michigan shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan.

l. **Incorporation of Exhibits.** All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court. Upon its filing, the Exhibit may be inspected in the office of the clerk of the Bankruptcy Court or its designee during normal business hours or at the Bankruptcy Court's website for a fee at https://ecf.mieb.uscourts.gov. The Exhibits may also be requested in writing from the Debtor's counsel. All Exhibits may be revised prior to the Effective Date by the filing of the revised Exhibits with the Bankruptcy Court, so long as the revised Exhibits are substantially in conformance with the terms of this Plan. The Exhibits are an integral part of the Plan, and entry of the Confirmation Order by the Bankruptcy Court shall constitute an approval of the Exhibits.

m. **Modifications to the Plan.** The Debtor may amend or modify the Plan and any schedule or supplement hereto, at any time prior to the Effective Date in accordance with the Bankruptcy Code, Bankruptcy Rules or any applicable court order. The Debtor expressly reserves its rights to alter,

amend or modify materially the Plan, one or more times, after Confirmation, as provided by section 1193 of the Bankruptcy Code, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan or the Confirmation Order, in such matters as may be necessary to can-y out the purposes and intent of the Plan. A Holder of a Claim or Equity Interest that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified or supplemented, if the proposed alteration, amendment, modification or supplement does not materially and adversely change the treatment of the Claim or Equity Interest of such Holder.

n. **Courts of Competent Jurisdiction.** If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan or in this Subchapter V Case, such abstention, refusal or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

o. **Notice.** All notices, requests and demands to or upon the Debtor to be effective shall be in writing and, unless otherwise expressly provided herein,

p. shall be deemed to have been duly given or made when actually delivered or, in the case of notice by electronic transmission, when received and telephonically confirmed.

q. **Reservation of Rights.** The filing of the Plan, any statement or provision contained in the Plan, or the talcing of any action by the Debtor with respect to the Plan, shall not be deemed to be an admission or waiver of any rights of the Debtor with respect to any Holders of Claims against or Equity interests in the Debtor.

r. **No Waiver.** Neither the failure of a Debtor to list a Claim or Equity Interest in the Debtor's Schedules, the failure of a Debtor to object to any Claim, Administrative Claim or Equity Interest for purposes of voting, the failure of a Debtor too object to a Claim, Administrative Claim or Equity Interest prior to the Confirmation Date or the Effective Date, nor the failure of a Debtor to assert a Retained Cause of Action prior to the Confirmation Date or the Effective Date shall, in the absence of a legally-effective express waiver or release executed by the Debtor with the approval of the Bankruptcy Court, if required, and with any other consents or approvals required under the Plan, be deemed a waiver or release of the right of a Debtor or its respective successors, either before or after solicitation of votes on the Plan, the Confirmation Date or the Effective Date, to (a)

object to or examine such Claim, Administrative Claim or Equity Interest, in whole or in part, or (b) retain or either assign or exclusively assert, pursue, prosecute, utilize, or otherwise act or enforce any Retained Cause of Action against the Holder of such Claim, Administrative Claim or Equity Interest.

s. **Release of Liens.** The Debtor, Reorganized Debtor, and all parties-in interest, including without limitation any Creditor, shall be required to execute any document reasonably requested by the other to memorialize and effectuate the terms and conditions of this Plan. This shall include without limitation any execution by the Debtor or Reorganized Debtor of UCC financing statements and the execution by Creditors of any UCC or mortgages, releases or terminations.

t. **Set offs and Counter claims.** No Creditor (including without limitation a Person or entity that becomes a Creditor as a result of a rejection of a contract) shall be allowed to set off a Claim against an obligation to the Debtor or Reorganized Debtor arising in connection with a different contract. Unless expressly asserted in this Subchapter V Case through the filing of a Proof of Claim, all setoffs and counterclaims are waived pursuant to this Plan. The terms of this paragraph 11.12 shall not apply to any taxing authority.

u. **11 U.S.C. §1129 (a)(5) Provision-** The Debtor's sole insider is and shall remain its sole shareholder Steve Withrow. His current salary shall not exceed the sum of $90,000 for the life of the plan.

v. **1191 (c)(3) Provision-** For purposes of satisfying the obligations of the Debtor under section 1191 (c)(3) the Debtor proposes the following remedies to creditors.

2. Should the Debtor default in the payment to a creditor, that creditor shall have the right to make a written demand of the Debtor outlining the nature and amount of the default by notifying the Debtor and Debtor's counsel. The Debtor shall have 30 days to cure the default or make other mutually agreeable arrangements with the Debtor. Should the Debtor not cure the default, the affected creditor shall have the right to seek to reopen the case to seek appropriate remedies; or

1. Should the Debtor default in the payment to a creditor, that creditor shall have the right to make a written demand of the Debtor outlining the nature and amount of the default by notifying the Debtor and Debtor's counsel. The Debtor shall have 30 days to cure the default or make other mutually agreeable arrangements with the Debtor. Should the Debtor not cure the default the affected creditor shall have the right to seek remedies in State Court.

WHEREFORE the Debtor prays for entry of an Order Confirming this plan.

Dated: 7/21/25

Respectfully submitted,

/s/ George E. Jacobs
George E. Jacobs (P36888)
2425 S. Linden Rd., Ste. C
Flint, MI 48532
(810) 720-4333
george@bklawoffice.com

**EXHIBIT C**

LIQUIDATION ANALYSIS

**A. Introduction**

Under the "best interests of creditors" test set· forth in section 1 129(a)(7) of the Bankruptcy Code, the Bankruptcy Court may not confirm a plan of reorganization unless the plan provides each holder of a claim or interest, who does not otherwise vote in favor of the plan with property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. To demonstrate that the Plan satisfies the "best interests of creditors" test, the Debtor has prepared the following hypothetical Liquidation Analysis. The Liquidation Analysis estimates potential Cash distributions to Holders of Allowed Claims and Interests in a hypothetical Chapter 7 liquidation of the Debtor's assets. Asset values discussed in the Liquidation Analysis may differ materially from values referred to in the Plan and Disclosure Statement.

**B. Scope, Intent, and Purpose of the Liquidation Analysis**

The determination of the costs of and hypothetical proceeds from the liquidation of the Debtor's assets is an uncertain process involving the extensive use of estimates and assumptions that, although considered reasonable by the Debtor, are inherently subject to significant business,

economic, and competitive uncertainties and contingencies beyond the control of the Debtor, and his advisors. Inevitably, some assumptions in the Liquidation Analysis would not materialize in an actual Chapter 7 liquidation, and unanticipated events and circumstances could affect the ultimate results in an actual Chapter 7 liquidation. The Liquidation Analysis was prepared for the sole purpose of generating a reasonable good faith estimate of the proceeds that would be generated if the Debtor were to be liquidated in accordance with Chapter 7 of the Bankruptcy Code. The Liquidation Analysis is not intended and should not be used for any other purpose. The underlying financial information in the Liquidation Analysis was not compiled or examined by any independent accountants.

**NEITHER THE DEBTOR NOR HIS ADVISORS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS WOULD OR WOULD NOT APPROXIMATE THE ESTIMATES AND ASSUMPTIONS REPRESENTED IN THE LIQUIDATION ANALYSIS. ACTUAL RESULTS COULD VARY MATERIALLY.**

B. **Notes Applicable to the Liquidation Analysis I.**

Appointment of a Chapter 7 Trustee Pursuant to II U.S.C. §1129(a)(7)(A)(ii), the liquidation value, for purposes of the "best interest of creditors" assessment, is to be made as of the effective date of the plan. Because this date is unknown at this time, the Debtor has utilized historical financial information, up to the time of the

filing of the Chapter 11 Plan of Reorganization. The Debtor expects that at the time of the effective date of its Plan, financial circumstances regarding its asset and liability base will not have significantly changed.

### D. Liquidation Value

For the Debtor's interest in personal property, the liquidation values take into account the presumed costs of sale, including sales broker fees of 6 percent for real estate if applicable. Deductions are made following the liquidation chart for Chapter 7 Trustee statutory fees, and an estimate for the fees of the Trustee's professionals. The Debtor did not take into account the value of potential avoidance actions, as the Debtor does not anticipate pursuing any potential avoidance actions. The Debtor does not anticipate pursuing any potential avoidance actions due to the fact that the Debtor believes the defendants would have ordinary course and new value defenses. The Debtor's plan projections and liquidation analysis demonstrate the Debtor's ability to pay unsecured creditors in full over the term of the plan, making the pursuit of avoidance actions unnecessary.

### E. Chapter 7 Trustee Fee

It is assumed that a Trustee will receive the sum of the proceeds as set forth under the liquidation value. The limitations on the Chapter 7 trustee's fees are contained in 11 U.S.C. §326. For purposes of the Liquidation Analysis, the chapter 7 trustee's fees are calculated using the limitations of Section 326 of the Bankruptcy Code and are based upon equity in the property.

# LIQUIDATION ANALYSIS

| ASSET | DEBT | EQUITY |
|---|---|---|
| Machinery & Equip. | 7500 | 7500 |
| Inventory | 6500 | 6500 |
| Office Equip. | 1000 | 1000 |
| Deposits | 9753 | 9753 |
| | $ 24,753 | $24,753 |

| | |
|---|---|
| Chapter 7 Trustee Fees/Lega Fees | 2000 |
| Costs of liquidation | 2475 |
| Chapter 11 Administrative fees | 21, 738 |
| | ($213) |

**NET TO UNSECURED CREDITORS 0.00**

# PREMIER GENERATOR SERVICE, LLC

**PROJECTIONS OF INCOME & EXPENSE**

**AUGUST 2026 - DECEMBER 2026**

| | Aug-26 | Sep-26 | Oct-26 | Nov-26 | Dec-26 |
|---|---|---|---|---|---|
| **INCOME** | | | | | |
| GROSS SALES | 60,000.00 | 60,000.00 | 60,000.00 | 52,500.00 | 52,500.00 |
| COST OF GOODS SOLD | 30,000.00 | 30,000.00 | 30,000.00 | 25,000.00 | 25,000.00 |
| **TOTAL GROSS INCOME:** | $30,000.00 | $30,000.00 | $30,000.00 | $27,500.00 | $27,500.00 |
| **EXPENSES** | | | | | |
| SUPPLIES (OFFICE) | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| SUPPLIES (FIELD) | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| INSURANCE | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 |
| 1099 LABOR / PAYROLL | 19,500.00 | 19,500.00 | 19,500.00 | 19,500.00 | 19,500.00 |
| VEHICLE EXPENSE | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 |
| REPAIRS, MAINTENANCE, & TOOLS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| TELEPHONE / UTILITY | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 |
| MISCELLANEOUS | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| TAX | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 |
| **TOTAL EXPENSES:** | $26,450.00 | $26,450.00 | $26,450.00 | $26,450.00 | $26,450.00 |
| **NET INCOME:** | $3,550.00 | $3,550.00 | $3,550.00 | $1,050.00 | $1,050.00 |
| **PLAN PAYMENT:** | $0.00 | $5,000.00 | $2,000.00 | $2,000.00 | $2,000.00 |
| **NET CASH ON HAND:** | **$3,550.00** | **$2,100.00** | **$3,650.00** | **$2,700.00** | **$1,750.00** |

## PREMIER GENERATOR SERVICE, LLC

**PROJECTIONS OF INCOME & EXPENSE**

**JANUARY 2027 - JUNE 2027**

| | Jan-27 | Feb-27 | Mar-27 | Apr-27 | May-27 | Jun-27 |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| GROSS SALES | 60,000.00 | 60,000.00 | 60,000.00 | 60,000.00 | 60,000.00 | 60,000.00 |
| COST OF GOODS SOLD | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 |
| **TOTAL GROSS INCOME:** | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 |
| **EXPENSES** | | | | | | |
| SUPPLIES (OFFICE) | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| SUPPLIES (FIELD) | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| INSURANCE | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 |
| 1099 LABOR / PAYROLL | 19,500.00 | 19,500.00 | 19,500.00 | 19,500.00 | 19,500.00 | 19,500.00 |
| VEHICLE EXPENSE | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 |
| REPAIRS, MAINTENANCE, & TOOLS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| TELEPHONE / UTILITY | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 | 600.00 |
| MISCELLANEOUS | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| TAX | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 |
| **TOTAL EXPENSES:** | $26,450.00 | $26,450.00 | $26,450.00 | $26,450.00 | $26,450.00 | $26,450.00 |
| **NET INCOME:** | $3,550.00 | $3,550.00 | $3,550.00 | $3,550.00 | $3,550.00 | $3,550.00 |
| **PLAN PAYMENT:** | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 |
| **NET CASH ON HAND:** | **$3,300.00** | **$4,850.00** | **$6,400.00** | **$7,950.00** | **$9,500.00** | **$11,050.00** |

## PREMIER GENERATOR SERVICE, LLC

**PROJECTIONS OF INCOME & EXPENSE**

**JULY 2027 - DECEMBER 2027**

| | Jul-27 | Aug-27 | Sep-27 | Oct-27 | Nov-27 | Dec-27 |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| GROSS SALES | 60,000.00 | 65,000.00 | 65,000.00 | 65,000.00 | 65,000.00 | 55,000.00 |
| COST OF GOODS SOLD | 30,000.00 | 32,500.00 | 32,500.00 | 32,500.00 | 32,500.00 | 27,500.00 |
| **TOTAL GROSS INCOME:** | $30,000.00 | $32,500.00 | $32,500.00 | $32,500.00 | $32,500.00 | $27,500.00 |
| **EXPENSES** | | | | | | |
| SUPPLIES (OFFICE) | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 |
| SUPPLIES (FIELD) | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 |
| INSURANCE | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 |
| 1099 LABOR / PAYROLL | 19,500.00 | 21,500.00 | 21,500.00 | 21,500.00 | 21,500.00 | 21,500.00 |
| VEHICLE EXPENSE | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 |
| REPAIRS, MAINTENANCE, & TOOLS | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 |
| TELEPHONE / UTILITY | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 |
| MISCELLANEOUS | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 |
| TAX | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 |
| **TOTAL EXPENSES:** | $27,050.00 | $29,050.00 | $29,050.00 | $29,050.00 | $29,050.00 | $29,050.00 |
| **NET INCOME:** | $2,950.00 | $3,450.00 | $3,450.00 | $3,450.00 | $3,450.00 | -$1,550.00 |
| **PLAN PAYMENT:** | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 |
| **NET CASH ON HAND:** | **$12,000.00** | **$13,450.00** | **$14,900.00** | **$16,350.00** | **$17,800.00** | **$14,250.00** |

## PREMIER GENERATOR SERVICE, LLC

**PROJECTIONS OF INCOME & EXPENSE**

**JANUARY 2028 - JUNE 2028**

| | Jan-28 | Feb-28 | Mar-28 | Apr-28 | May-28 | Jun-28 |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| GROSS SALES | 62,500.00 | 62,500.00 | 62,500.00 | 62,500.00 | 62,500.00 | 62,500.00 |
| COST OF GOODS SOLD | 32,500.00 | 32,500.00 | 32,500.00 | 32,500.00 | 32,500.00 | 32,500.00 |
| **TOTAL GROSS INCOME:** | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 |
| **EXPENSES** | | | | | | |
| SUPPLIES (OFFICE) | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 |
| SUPPLIES (FIELD) | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 |
| INSURANCE | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 |
| 1099 LABOR / PAYROLL | 21,500.00 | 21,500.00 | 21,500.00 | 21,500.00 | 21,500.00 | 21,500.00 |
| VEHICLE EXPENSE | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 |
| REPAIRS, MAINTENANCE, & TOOLS | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 |
| TELEPHONE / UTILITY | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 |
| MISCELLANEOUS | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 | 1,100.00 |
| TAX | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 |
| **TOTAL EXPENSES:** | $29,050.00 | $29,050.00 | $29,050.00 | $29,050.00 | $29,050.00 | $29,050.00 |
| **NET INCOME:** | $950.00 | $950.00 | $950.00 | $950.00 | $950.00 | $950.00 |
| **PLAN PAYMENT:** | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 |
| **NET CASH ON HAND:** | **$13,200.00** | **$12,150.00** | **$11,100.00** | **$10,050.00** | **$9,000.00** | **$7,950.00** |

## PREMIER GENERATOR SERVICE, LLC

**PROJECTIONS OF INCOME & EXPENSE**

**JULY 2028 - DECEMBER 2028**

| | Jul-28 | Aug-28 | Sep-28 | Oct-28 | Nov-28 | Dec-28 |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| GROSS SALES | 62,500.00 | 67,000.00 | 67,000.00 | 67,000.00 | 67,000.00 | 57,500.00 |
| COST OF GOODS SOLD | 32,500.00 | 35,000.00 | 35,000.00 | 35,000.00 | 35,000.00 | 30,000.00 |
| **TOTAL GROSS INCOME:** | $30,000.00 | $32,000.00 | $32,000.00 | $32,000.00 | $32,000.00 | $27,500.00 |
| **EXPENSES** | | | | | | |
| SUPPLIES (OFFICE) | 175.00 | 175.00 | 175.00 | 175.00 | 175.00 | 175.00 |
| SUPPLIES (FIELD) | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 |
| INSURANCE | 975.00 | 975.00 | 975.00 | 975.00 | 975.00 | 975.00 |
| 1099 LABOR / PAYROLL | 22,000.00 | 22,000.00 | 22,000.00 | 22,000.00 | 22,000.00 | 22,000.00 |
| VEHICLE EXPENSE | 1,400.00 | 1,400.00 | 1,400.00 | 1,400.00 | 1,400.00 | 1,400.00 |
| REPAIRS, MAINTENANCE, & TOOLS | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 |
| TELEPHONE / UTILITY | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 |
| MISCELLANEOUS | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 |
| TAX | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 |
| **TOTAL EXPENSES:** | $30,100.00 | $30,100.00 | $30,100.00 | $30,100.00 | $30,100.00 | $30,100.00 |
| **NET INCOME:** | -$100.00 | $1,900.00 | $1,900.00 | $1,900.00 | $1,900.00 | -$2,600.00 |
| **PLAN PAYMENT:** | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 |
| **NET CASH ON HAND:** | **$5,850.00** | **$5,750.00** | **$5,650.00** | **$5,550.00** | **$5,450.00** | **$850.00** |

## PREMIER GENERATOR SERVICE, LLC

**PROJECTIONS OF INCOME & EXPENSE**

**JANUARY 2029 - JUNE 2029**

| | Jan-29 | Feb-29 | Mar-29 | Apr-29 | May-29 | Jun-29 |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| GROSS SALES | 67,500.00 | 67,500.00 | 67,500.00 | 67,500.00 | 67,500.00 | 67,500.00 |
| COST OF GOODS SOLD | 35,000.00 | 35,000.00 | 35,000.00 | 35,000.00 | 35,000.00 | 35,000.00 |
| **TOTAL GROSS INCOME:** | $32,500.00 | $32,500.00 | $32,500.00 | $32,500.00 | $32,500.00 | $32,500.00 |
| **EXPENSES** | | | | | | |
| SUPPLIES (OFFICE) | 175.00 | 175.00 | 175.00 | 175.00 | 175.00 | 175.00 |
| SUPPLIES (FIELD) | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 |
| INSURANCE | 975.00 | 975.00 | 975.00 | 975.00 | 975.00 | 975.00 |
| 1099 LABOR / PAYROLL | 22,000.00 | 22,000.00 | 22,000.00 | 22,000.00 | 22,000.00 | 22,000.00 |
| VEHICLE EXPENSE | 1,400.00 | 1,400.00 | 1,400.00 | 1,400.00 | 1,400.00 | 1,400.00 |
| REPAIRS, MAINTENANCE, & TOOLS | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 |
| TELEPHONE / UTILITY | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 |
| MISCELLANEOUS | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 |
| TAX | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 |
| **TOTAL EXPENSES:** | $30,100.00 | $30,100.00 | $30,100.00 | $30,100.00 | $30,100.00 | $30,100.00 |
| **NET INCOME:** | $2,400.00 | $2,400.00 | $2,400.00 | $2,400.00 | $2,400.00 | $2,400.00 |
| **PLAN PAYMENT:** | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 | $2,000.00 |
| **NET CASH ON HAND:** | **$1,250.00** | **$1,650.00** | **$2,050.00** | **$2,450.00** | **$2,850.00** | **$3,250.00** |

## PREMIER GENERATOR SERVICE, LLC

**PROJECTIONS OF INCOME & EXPENSE**

**JULY 2029 - SEPTEMBER 2029**

| | Jul-29 | Aug-29 | Sep-29 |
|---|---|---|---|
| **INCOME** | | | |
| GROSS SALES | 67,500.00 | 70,000.00 | 70,000.00 |
| COST OF GOODS SOLD | 35,000.00 | 37,500.00 | 37,500.00 |
| **TOTAL GROSS INCOME:** | $32,500.00 | $32,500.00 | $32,500.00 |
| **EXPENSES** | | | |
| SUPPLIES (OFFICE) | 200.00 | 200.00 | 200.00 |
| SUPPLIES (FIELD) | 1,300.00 | 1,300.00 | 1,300.00 |
| INSURANCE | 1,100.00 | 1,100.00 | 1,100.00 |
| 1099 LABOR / PAYROLL | 23,000.00 | 23,000.00 | 23,000.00 |
| VEHICLE EXPENSE | 1,500.00 | 1,500.00 | 1,500.00 |
| REPAIRS, MAINTENANCE, & TOOLS | 425.00 | 425.00 | 425.00 |
| TELEPHONE / UTILITY | 900.00 | 900.00 | 900.00 |
| MISCELLANEOUS | 1,300.00 | 1,300.00 | 1,300.00 |
| TAX | 2,000.00 | 2,000.00 | 2,000.00 |
| **TOTAL EXPENSES:** | $31,725.00 | $31,725.00 | $31,725.00 |
| **NET INCOME:** | $775.00 | $775.00 | $775.00 |
| **PLAN PAYMENT:** | $2,000.00 | $2,000.00 | $2,000.00 |
| **NET CASH ON HAND:** | **$2,025.00** | **$2,800.00** | **$3,575.00** |